UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | 3:21-CR-30080-RAL |
| Plaintiff, | |
| vs. | OPINION AND ORDER DENYING MOTIONS FOR COMPASSIONATE RELEASE AND FOR SENTENCE REDUCTION |
| LEE MOLICA, | |
| Defendant. | |

Defendant Lee Molica filed a pro se Motion for Compassionate Release and, through counsel, a supplement to that motion under 18 U.S.C. § 3582(c)(1)(A)(i). Docs. 83, 94. Molica and his counsel argue his request for compassionate relief should be granted due to extraordinary and compelling reasons, citing Molica's ongoing health issues and delays in receiving medical care. Docs. 83, 94, 103. Molica then filed a pro se motion for reduction of sentence, Doc. 104, seeking a reduction as a "zero-point" offender under U.S.S.G. § 4.C1.1. Doc. 104. The United States opposed Molica's motions. Docs. 99, 105. For the reasons discussed, Molica's motions are denied.

## I.     Facts and Procedural History

Molica is serving a 90-month custody sentence, with four years of supervised release to follow, for possession with intent to distribute a controlled substance. Doc. 74. Molica presently is housed at the Bureau of Prisons Federal Medical Center at Fort Worth, Texas and his projected release date is June 30, 2027. https://www.bop.gov/inmateloc/76182-509 (last checked August 13, 2024).

Following a review of his medical conditions on May 24, 2023, Molica was listed as a Care Level 3 patient. Doc. 97 at 80. At the time of the filing of the compassionate release motion in 2023, Molica was 62 years old and is now 63 years old.

Molica's charges arose from his role in arranging for and transporting large quantities of methamphetamine from California into South Dakota. Doc. 67 at 4-5. At the time of his sentencing on these charges, Molica also had pending drug charges in Buffalo County, South Dakota, and the State of California. Doc. 67 at 10. After a discount for acceptance of responsibility, Molica's Total Offense Level was 27, and his criminal conviction record which included points from four prior convictions in California state court placed him in Criminal History Category IV. Doc. 67 at 6-9. Molica's sentencing guideline range thus was 100 to 125 months. However, the Court found that "Molica's criminal history was overstated," and sentenced him to 90 months of custody as if he were in Criminal History Category III with a guideline range of 87 to 108 months. Doc. 73.

Molica's medical history shows a variety of medical conditions, some of which preceded his sentencing and are ongoing. See generally Doc. 89; Doc. 94 at 1. Among other diagnoses, Molica specifically highlights the following as risk factors: "a 5.4 centimeter ascending thoracic aortic aneurysm, a sizable mass on his neck, a lung nodule, a thyroid nodule, nonobstructive coronary artery disease, hyperlipidemia, and hypertension." Doc. 94 at 1-2, Doc. 89 at 19-20, 33, 124-25. While the United States notes that Molica refused a COVID-19 vaccine on August 5, 2022, Doc. 99 at 2-3, neither Molica nor his counsel raises any COVID-related concerns as reasons for compassionate release. See Doc. 103 ("Molica's motion is not based on the COVID-19 pandemic or his susceptibility to the virus.").

Molica points to "delay[s] in [receiving] necessary medical care" as justification for granting compassionate release. Doc. 83 at 1-2; Doc. 94 at 4; Doc. 103 at 1. As evidence of delays, Molica points to (1) a "nearly 6-month delay" in treating his 5.4 centimeter ascending aortic aneurysm (first diagnosed February 2023 with the preoperative echocardiogram in May 2023, the preoperative cardiac catheterization study in June 2023, and finally moved to a holding cell in preparation for open heart coronary artery surgery in August 2023); (2) the "significant delay" in having an ultrasound performed on his neck, which ultimately discovered a 9.4 x 5.4 x 6.7 centimeter mass which will require surgery to remove; (3) a thyroid nodule that has yet to be biopsied (the original target date for the biopsy was September 2023, then rescheduled for October 2023, and still had not yet taken place as of filings on November 2, 2023); and (4) a pulmonary nodule that requires monitoring by CT scan (the original target date for the CT scan was August 2023 and eventually took place in September 2023, but requires a follow-up CT scan in four to six months). Doc. 94 at 5-8; Doc. 103 at 2-4; Doc. 83 at 1.

In its response to the motion, the United States argues that Molica's aortic aneurysm and hypertension "[were] treated appropriately," and that Molica underwent surgery on August 24, 2023, to repair the ascending aortic aneurysm. Doc. 99 at 12-15; Doc. 98 at 13, 88, 232-35. The United States points to Molica's lengthy medical records to show he has received extensive and appropriate care. Doc. 99 at 14-15; Doc. 98 at 1-260. The United States cites to medical records indicating that Molica recovered well from the aneurysm surgery, Doc. 98 at 3, 5, and was scheduled for lipoma removal in 2024. Id. at 6, 50. The United States notes that the records lack any indication that Molica is unable to care for himself. Doc. 99 at 10-11 (noting BOP guide that Care Level 3 patients like Molica are considered "fragile outpatients" but "do not require daily nursing supervision"). The United States also argues that if Molica's health were to decline, FMC

3

Fort Worth has a 76-bed medical unit for Care Level 4 inmates needing 24-hour nursing care. Id. at 11.

Molica counters that he was at risk of rupture of the aneurysm and death for six months as he awaited surgery. Doc. 94 at 7. Molica claims that he needs surgery due to a mass of homogenous fat on the right side of his neck, a biopsy of a calcified thyroid module, and a CT scan for a nodule in the left upper lobe of his lungs. Doc. 94 at 7-8. Molica seeks a time-served sentence and release to Bakersville, California, where his sister can take him to medical appointments and where he would apply for health insurance coverage. Doc. 94 at 9-10.

Molica filed a pro se motion for compassionate release, Doc. 83, and later a pro se motion for reduction in sentence. Doc. 104. The Federal Public Defender for North and South Dakota supported Molica's motion for compassionate release but chose not to supplement the record on Molica's motion for a sentence reduction. Doc. 94. The United States opposes both motions. Doc. 99, 105.

## II.    First Step Act Motion

### A. Release Under Section 3582(c)(1)(A)

Sentences are final judgments, and under ordinary circumstances, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); see also United States v. Olson, No. 3:19-CR-30133-RAL, 2021 WL 4478031, at *1 (D.S.D. Sept. 30, 2021). However, 18 U.S.C. § 3582(c)(1)(A) provides an exception. Section 3582(c)(1)(A), as amended by the First Step Act of 2018, allows district courts to consider and decide motions seeking what is commonly called "compassionate release."

Before a district court can consider a First Step Act motion, an inmate must satisfy a statutory exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A). This requirement is met if (1) the

4

prisoner has fully exhausted all administrative rights to appeal the BOP's failure to file a motion on the prisoner's behalf or (2) 30 days have passed from the receipt of such a request by the warden of the prisoner's facility, whichever is earlier. Id.

Molica maintains that he submitted a handwritten request for compassionate release to the warden of his facility on April 8, 2023. Doc. 83 at 2; Doc. 92 at 1; Doc. 94 at 3. Because this request did not appear in the Bureau of Prisons's records, the Federal Public Defender submitted a second administrative request on Molica's behalf on August 15, 2023. Doc. 94 at 3. The United States's answer uses August 15, 2023, as the date for the compassionate release request, Doc. 99 at 2, and acknowledges that "the warden ha[d] taken no action on the request as of October 4, 2023." Id. Therefore, Molica has satisfied the exhaustion requirement regardless of whether his request was first made on April 8 or August 15, 2023. Besides, the Eighth Circuit has held that § 3582(c)(1)(A)'s exhaustion requirement is non-jurisdictional but serves as a "mandatory claim-processing rule" that must be enforced if raised by the opposing party. United States v. Houck, 2 F.4th 1082, 1084 (8th Cir. 2021). The United States does not raise any failure to exhaust argument. Doc. 99 at 2.

Under § 3582(c)(1)(A), a district court may grant a prisoner's motion for a reduced sentence after the Court finds (1) that extraordinary and compelling reasons exist and warrant such a reduction;[1] (2) those reasons are consistent with the applicable policy statement promulgated by the United States Sentencing Commission, here § 1B1.13; and (3) an examination of the § 3553(a) sentencing factors supports a sentence reduction. § 3582(c)(1)(A)(i)–(ii). Congress did not define "extraordinary and compelling reasons." See 28 U.S.C. § 994(t). Instead, Congress charged the

---

[1] A court could also grant a reduced sentence if the defendant is at least 70 years old and has served at least 30 years in prison. 18 U.S.C. § 3582(c)(1)(A)(ii). Molica meets neither criteria of § 3582(c)(1)(A)(ii).

Sentencing Commission with issuing general policy statements outlining the "appropriate use of . . . the sentence modification provisions set forth in section[] . . . 3582(c)," including "what should be considered extraordinary and compelling reasons for sentence reduction [and] the criteria to be applied." § 994(a)(2)(c), (t).

Effective November 1, 2023, the Sentencing Commission updated the criteria for what constitutes "[e]xtraordinary and compelling reason[s]" to reduce a term of imprisonment. U.S.S.G. § 1B1.13(b).  As amended, "[e]xtraordinary and compelling reasons exist under any of the following circumstances or [through] a combination thereof": (1) medical circumstances of the defendant, (2) age of the defendant, (3) family circumstances of the defendant, (4) being a victim of sexual or physical abuse while in custody, (5) other reasons with equal gravity as the aforementioned circumstances, and (6) unusually long sentences. Id. A "district court has broad discretion in determining whether proffered circumstances warrant" compassionate release under the First Step Act. United States v. Loggins, 966 F.3d 891, 893 (8th Cir. 2020).

In determining whether Molica's medical conditions and delays in treatment constitute extraordinary and compelling reasons to reduce his sentence, this Court takes guidance from the Sentencing Commission's policy statement, § 1B1.13(b)(1).[2]  The Sentencing Commission identified specific criteria for when a defendant's medical circumstances constitute an extraordinary and compelling reason to reduce his or her sentence:

> (A) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory).  A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
> (B) The defendant is—

---

[2] Defendant does not claim to satisfy any alternative classifications for an "extraordinary and compelling" reason as provided in § 1B1.13(b)(2)-(6).  Therefore, the analysis is constrained to § 1B1.13 (b)(1). See also Doc. 99 at 12-13.

> (i) suffering from a serious physical or medical condition,
>
> (ii) suffering from a serious functional or cognitive impairment, or
>
> (iii) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.
>
> (D) The defendant presents the following circumstances—
>
> (i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;
>
> (ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and
>
> (iii) such risk cannot be adequately mitigated in a timely manner.

U.S.S.G. § 1B1.13(b)(1). Molica and his counsel argue the evidence demonstrates an "extraordinary and compelling" reason under the definition given in § 1B1.13(b)(1)(B)(i); specifically, "[t]he defendant is suffering from a serious physical or medical condition that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." See Doc. 94 at 8; Doc. 103 at 4. Molica does not argue that he qualifies under any of the alternate definitions provided in (b)(1), so this Court focuses on subsection (B)(i).[3]

An extraordinary and compelling reason for compassionate release exists under § 1B1.13(b)(1)(B)(i) when a defendant suffers from a serious physical or medical condition that

---

[3] The Defendant could have argued that, given the alleged delays in receiving medical care, he "is suffering from a medical condition that requires . . . specialized medical care that is not being provided." § 1B1.13(b)(1)(C). Molica would likely not satisfy this criterion because he has received and continues to receive the requisite medical care, albeit on a much slower basis than he believes proper.

he is not expected to recover from and that substantially diminishes his ability to provide self-care within a custodial environment. Molica currently suffers from no such condition, and thus fails to satisfy this definition of "extraordinary and compelling."

Molica focuses on four medical conditions and delays in treating these conditions: (1) an ascending thoracic aortic aneurysm, (2) a large mass on his neck, (3) a partially calcified left thyroid nodule, and (4) a pulmonary nodule. Doc. 83 at 1; Doc. 94 at 5-8; Doc. 92 at 1; Doc. 99 at 2; Doc. 103 at 1. These are serious medical conditions, but Molica's medical records from FMC Fort Worth show that the Bureau of Prisons has arranged for treatment for these conditions and that he appears to be responding well to the treatment, however delayed it was. Doc. 98 at 3, 5-6, 50; Doc. 102 at 5, 23.

The legal standard under subsection (B)(i) requires that the Defendant's medical (or physical, functional, or mental) condition "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility." Molica is a Care Level 3 patient at FMC Fort Worth. The records suggest that Molica not only has received frequent and competent medical care, but also has improved and responded well to the treatments received so far.

Molica's reply does not argue that he cannot provide some degree of self-care. Rather Molica argues that he "has experienced significant delays in necessary medical treatment" that have led him to be unable to "provide meaningful self-care to address [these] conditions within the prison environment." Doc. 103 at 4. However, Molica's more recent medical records indicate that Molica's condition is generally improving at FMC Fort Worth, notwithstanding the delays in receiving treatment. Each of his medical conditions is being addressed, albeit not always in a timely manner. Molica still has serious health conditions and whether through treatment delays

materially affecting his ability to provide self-care or deterioration of his health, can file another motion for compassionate release. At this point, Molica has failed to demonstrate that FMC Fort Worth is not providing him with appropriate care or that he has a substantially diminished ability to provide self-care, and thus fails to satisfy the § 1B1.13(b)(1)(B)(i) standard.

**B. Section 3553(a) Sentencing Factors and Danger to Community**

A court need not consider the § 3553(a) factors when there are no extraordinary or compelling reasons to reduce a sentence. United States v. Brown, No. 4:18-CR-40138–LLP, 2023 U.S. Dist. Lexis 83723, *12 (D.S.D. May 9, 2023). Nevertheless, a review of the § 3553(a) factors weighs against granting compassionate release to Molica. The § 3553(a) sentencing factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant; and
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the [Sentencing Commission] guidelines . . . .
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct

18 U.S.C. § 3553(a). These factors inform the Court's duty to ensure the sentence imposed is "'sufficient, but not greater than necessary,' to comply with the sentencing purposes set forth in § 3553(a)[]." Pepper v. United States, 562 U.S. 476, 491 (2011).

Molica had sufficient criminal history points to justify placement in Criminal History Category IV, with a Total Offense Level of 27, but at sentencing the Court treated him as though

he was in Criminal History Category III. Doc. 94 at 9; Doc. 99 at 13-14. Accordingly, the Court imposed a 90-month sentence plus four years of supervised release for possession with intent to distribute, a nonviolent drug offense. Doc 94 at 1 (citing Doc. 74); Doc. 103 at 4. Molica has served less than half of his sentence at this point. His projected release date is less than three years in the future.

The nature and circumstances of Molica's offense justified a 90-month sentence. Molica was a significant source of methamphetamine, selling to those who transported methamphetamine to South Dakota, and transporting methamphetamine himself into the state in quantities that exceeded 500 grams. Doc. 67 at 4-6. Molica's personal history and characteristics do not particularly militate for early release. Molica received a good upbringing in California, graduating high school and playing football at the junior college level. Doc. 67 at 11-13. He worked on-and-off as a painter and for five months as a janitor. Id. He has longstanding substance abuse issues, beginning methamphetamine use at age 30. Id. at 12-13. His criminal record and arrest history are drug-related with a few driving without a license convictions mixed in. Id. at 7-11. The language of § 3553(a)(2) compels a sentencing court to consider "the need for the sentence imposed to reflect the seriousness of the offense . . . and to provide just punishment for the offense." A court under § 3553(a)(6) must also avoid creating "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Granting Molica the immediate release he seeks does not find support in the § 3553(a) factors.

Molica to his credit has taken steps to better himself during incarceration. He has had no disciplinary violations and has taken courses in wellness, Spanish, and commercial driving. Doc. 89 at 362-63. While this Court is pleased that Molica has undertaken these educational activities, they do not justify compassionate release under § 3582(c)(1)(A).

## III.    Sentencing Guideline Retroactivity Motion

Molica has filed a pro se motion for sentence reduction, Doc. 104, claiming that he is eligible

for a reduction as a "zero-point offender" under U.S.S.G. § 4C1.1. The United States opposes that

motion, Doc. 105, and the Federal Public Defender for North and South Dakota chose not to

supplement the motion.

In Part B, Subpart 1 to Amendment 821 to the Sentencing Guidelines, the Sentencing

Commission, effective November 1, 2023, added what now appears in §4C1.1(a), providing a 2-

offense-level reduction for many offenders who present zero criminal history points. The new

provision states:

§4C1.1. Adjustment for Certain Zero-Point Offenders
(a) ADJUSTMENT.—If the defendant meets all of the following criteria:
(1) the defendant did not receive any criminal history points from Chapter Four, Part A;
(2) the defendant did not receive an adjustment under §3A1.4 (Terrorism);
(3) the defendant did not use violence or credible threats of violence in connection with the offense;
(4) the offense did not result in death or serious bodily injury;
(5) the instant offense of conviction is not a sex offense;
(6) the defendant did not personally cause substantial financial hardship;
(7) the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
(8) the instant offense of conviction is not covered by §2H1.1 (Offenses Involving Individual Rights);
(9) the defendant did not receive an adjustment under §3A1.1 (Hate Crime Motivation or Vulnerable Victim) or §3A1.5 (Serious Human Rights Offense); and
(10) the defendant did not receive an adjustment under §3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848; decrease the offense level determined under Chapters Two and Three by 2 levels.

On August 24, 2023, the Sentencing Commission determined that this change would apply

retroactively. The Sentencing Commission further directed that a court granting relief may not

order the release of a defendant to occur any earlier than February 1, 2024. See § 1B1.10(e)(2)

(Nov. 1, 2023).

11

Molica fails to meet the criteria for such a sentence reduction. Eligibility for a sentence reduction for zero-point offenders requires a person to have arrived at sentencing with zero criminal history points. Molica had seven criminal history points. Doc. 64 at 7-9. Thus, he does not qualify for a sentence reduction under U.S.S.G. § 4C1.1.

**IV.     Conclusion and Order**

For the reasons explained herein, it is hereby

ORDERED that Defendant's Motion for Compassionate Release, Doc. 83, is denied without prejudice to filing another such motion if his health deteriorates. It is further

ORDERED that Defendant's Motion for Reduction of Sentence, Doc. 104, is denied.

DATED this __16th__ day of August, 2024.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE