UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>LEE MOLICA,<br><br>Defendant. | 3:21-CR-30080-RAL<br><br><br>OPINION AND ORDER DENYING MOTION FOR COMPASSIONATE RELEASE |

Defendant Lee Molica has filed a pro se Renewed Motion for Compassionate Release. Doc. 107. Molica argues his request for compassionate relief should be granted due to extraordinary and compelling reasons, citing what he believes to be improper delays in being released to a halfway house or home confinement. Id. The United States opposes Molica's motion for failing to exhaust administrative remedies and on the merits. Doc. 110. Because Molica has failed to exhaust his administrative remedies prior to filing the motion, his motion is denied.

I.  **Facts and Procedural History**

Molica is serving a 90-month custody sentence, with four years of supervised release to follow, for possession with intent to distribute a controlled substance. Doc. 74. Molica presently is housed at the Bureau of Prisons (BOP) Federal Medical Center at Fort Worth, Texas and according to the BOP website, his projected release date is April 14, 2027. Inmate Locator, BOP, https://www.bop.gov/inmateloc (last visited January 16, 2026). However, Molica's BOP paperwork lists his statutory projected release date as April 13, 2028, and his elderly offender

1

projected release date as November 22, 2026. Doc. 108 at 171.[1] Following a review of his medical conditions on May 24, 2023, Molica was listed as a Care Level 3 patient. Doc. 97 at 80. However,

---

[1] When reviewing Molica's BOP paperwork, this Court noted that Molica is deemed as "ineligible" under the First Step Act. Doc. 108 at 170. Therefore, while Molica has accumulated good time credit, see id. at 171, he has not accumulated any earned time credit.

Good time credit differs from earned time credit. 18 U.S.C. § 3624(b) "governs good time credits," and "provides that a prisoner serving a term longer than one year may earn up to fifty-four (54) days of credit per year if the prisoner 'has displayed exemplary compliance with institutional disciplinary regulations.'" Cobb v. Hendrix, No. 2:20-CV-00014, 2020 WL 5513425, at *1 (E.D. Ark. Sept. 14, 2020), as amended (Sept. 15, 2020) (citing Barber v. Thomas, 560 U.S. 474, 483 (2010) (upholding the BOP's good conduct credit calculation)).

In contrast, earned time credits are governed by the First Step Act (FSA). The FSA, Public Law No. 115-391, 132 Stat. 5195, was enacted on December 21, 2018, and brought about a number of prison and sentencing reforms. Under the FSA, time credits may be earned by eligible prisoners who successfully complete "evidence-based recidivism reduction programming" or "productive activities." 18 U.S.C. § 3632(d)(4)(A). Time credits are earned at the rate of "10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities." Id. § 3632(d)(4)(A)(i). Certain minimum and low risk prisoners are eligible to earn an additional 5 days of time for every 30 days of successful participation. Id. § 3632(d)(4)(A)(ii). Not all programs or activities that a prisoner may engage in while incarcerated qualify for time credits. See id. §§ 3635(3), (5).

Limits are also placed on who may earn those credits. Prisoners serving sentences for a conviction under one of the enumerated provisions of law in the First Step Act are ineligible to receive earned time credits. See id. § 3632(d)(4)(D) (listing provisions of law that render a prisoner ineligible to earn time credits). For example, certain convictions under 21 U.S.C. § 841 involving methamphetamine render a prisoner ineligible for earned time credits:

> (lviii) Section 401(a) of the Controlled Substances Act (21 U.S.C. 841), relating to manufacturing or distributing a controlled substance in the case of a conviction for an offense described in subparagraph (A), (B), or (C) of subsection (b)(1) of that section **for which death or serious bodily injury resulted from the use of such substance**.
>
> . . .
>
> (lxvii) Subparagraph (A)(viii) or (B)(viii) of section 401(b)(1) of the Controlled Substances Act (21 U.S.C. 841(b)(1)) or paragraph (1)(H) or (2)(H) of section 1010(b) the Controlled Substances Import and Export Act (21 U.S.C. 960(b)), relating to manufacturing, distributing, dispensing, or possessing with intent to manufacture, distribute, or dispense, or knowingly importing or exporting, a

> mixture of substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers, **if the sentencing court finds that the offender was an organizer, leader, manager, or supervisor of others in the offense**, as determined under the guidelines promulgated by the United States Sentencing Commission.

Id. (emphasis added).

Molica was convicted of 21 U.S.C. §§ 841(a)(l) and 841(b)(l)(B), Possession with Intent to Distribute a Controlled Substance. Doc. 74 at 1. Within his factual basis statement, Molica admitted to knowingly and intentionally possessing with the intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(B). Doc. 44. The PSR did not list Molica as an organizer, leader, manager, or supervisor of others in the offense. Doc. 67 at 6 (applying no adjustment for role in the offense). This Court adopted the PSR without change. Doc. 73-1 at 1. Therefore, Molica does not fall into a category that would render him ineligible for earned time credits under 18 U.S.C. § 3632(d)(4)(D). See 18 U.S.C. § 3632(d)(4)(D).

To the extent that Molica may be eligible for earned time credits, a petition under 28 U.S.C. § 2241 is the correct vehicle by which a federal petitioner can seek redress regarding the way his sentence is being calculated. United States v. Thompson, 297 F. App'x 561, 562 (8th Cir. 2008). However, such petitions must be filed in the district in which the petitioner is incarcerated—here, that would be the Northern District of Texas. See Rumsfeld v. Padilla, 542 U.S. 426, 442 (2004); Matheny v. Morrison, 307 F.3d 709, 711 (8th Cir. 2002); Bell v. United States, 48 F.3d 1042, 1043–44 (8th Cir. 1995). In addition, "[a] federal inmate normally must exhaust his administrative remedies before seeking habeas relief under 18 U.S.C. § 2241." Jennings v. Yates, No. 2:22-CV-130, 2023 WL 3025487, at *2 (E.D. Ark. Apr. 20, 2023) (citing Mathena v. United States, 577 F.3d 943, 946 (8th Cir. 2009)).

> The BOP has a four-step administrative exhaustion process for resolving inmate grievances: (1) a prisoner must submit an informal resolution with prison staff; (2) if the informal resolution is denied, a prisoner must submit a formal grievance to the Warden, on form BP-9; (3) if the formal grievance is denied, a prisoner must file an appeal of the Warden's decision to the appropriate Regional Director, on form BP-10; and (4) if the appeal is denied, the prisoner must challenge the Regional Director's decision by taking a final appeal to the General Counsel, on form BP-11.

Id. (citing 28 C.F.R. §§ 542.13–542.18).

3

more recently, in June 2025, Molica requested his care level be decreased from 3 to 2 to facilitate a transfer closer to his home in California. Doc. 108 at 32. The record is unclear on whether that request was granted. Molica is now 64 years old. Id. at 1.

Molica's charges arose from his role in arranging for and transporting large quantities of methamphetamine from California into South Dakota. Doc. 67 at 4–5. At the time of his sentencing on these charges, Molica also had pending drug charges in Buffalo County, South Dakota, and the State of California. Id. at 10. After a discount for acceptance of responsibility, Molica's Total Offense Level was 27, and his criminal conviction record which included points from four prior convictions in California state court placed him in Criminal History Category IV. Id. at 6–9. Molica's sentencing guideline range thus was 100 to 125 months. Id. at 14. However, the Court departed downward finding that Molica's criminal history was overstated, and sentenced him to 90 months of custody as if he were in Criminal History Category III with a guideline range of 87 to 108 months. Docs. 73; 73-1.

Molica's medical history shows a variety of medical conditions, some of which preceded his sentencing and are ongoing. See generally Doc. 89; Doc. 94 at 1; Doc. 108. In his last motion for compassionate release, among other diagnoses, Molica specifically highlighted the following as risk factors: "a 5.4 centimeter ascending thoracic aortic aneurysm, a sizable mass on his neck, a lung nodule, a thyroid nodule, nonobstructive coronary artery disease, hyperlipidemia, and hypertension." Doc. 94 at 1–2 (citing Doc. 89 at 19–20, 33, 124–25); see also Doc. 108. In its last Opinion and Order denying compassionate release, this Court determined that Molica suffered from no serious physical or medical condition that he is not expected to recover from and that substantially diminishes his ability to provide self-care within a custodial environment such

condition, and thus Molica's medical conditions failed to satisfy the definition of "extraordinary and compelling." See Doc. 106 at 7–8 (citing U.S.S.G. § 1B1.13(b)(1)(B)(i)).

Molica now points to what he believes to be an unnecessary medical hold as justification for granting compassionate release as this medical hold is impacting his ability to transfer from FMC Fort Worth to home confinement or a halfway house, for which he may otherwise be eligible. Doc. 107 at 1. Molica argues that the FMC Fort Worth medical staff refuse to drop the medical hold on Molica because of a nodule or spot on his lung. Id. He is upset about the hold preventing him from transfer because the medical staff has been aware of the nodule for four years, and he argues that he can get his lung treated by another provider once he has been moved from FMC Fort Worth. Id. In its response to the motion, the United States argues that Molica has failed to exhaust his administrative remedies, his complaint about his inability to transfer does not fit into any of the categories of extraordinary and compelling reasons for release as outlined in U.S.S.G. § 1B1.13 "leav[ing] the United States unable to meaningfully respond," and the 18 U.S.C. § 3553(a) factors weigh against Molica's release. Doc. 110. Molica has not filed a reply.

## II.     Exhaustion Requirement

Sentences are final judgments, and under ordinary circumstances, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); see also United States v. Olson, No. 3:19-CR-30133, 2021 WL 4478031, at *1 (D.S.D. Sept. 30, 2021). However, 18 U.S.C. § 3582(c)(1)(A) provides an exception. Section 3582(c)(1)(A), as amended by the First Step Act of 2018, allows district courts to consider and decide motions seeking what is commonly called "compassionate release." Before a district court can consider a First Step Act motion, an inmate must satisfy a statutory exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A). This requirement is met if (1) the prisoner has fully exhausted all administrative rights to appeal the

BOP's failure to file a motion on the prisoner's behalf or (2) 30 days have passed from the receipt of such a request by the warden of the prisoner's facility, whichever is earlier. Id.

Molica did not represent that he had exhausted his administrative remedies. See Doc. 107. The Eighth Circuit has held that § 3582(c)(1)(A)'s exhaustion requirement is non-jurisdictional but serves as a "mandatory claim-processing rule" that must be enforced if raised by the opposing party. United States v. Houck, 2 F.4th 1082, 1084 (8th Cir. 2021). As Molica has not shown that he exhausted his administrative remedies and the United States has raised Molica's failure to exhaust, this Court is required to dismiss Molica's motion without prejudice. 18 U.S.C. § 3582(c)(1)(A); Houck, 2 F.4th at 1084.

### III.  Conclusion and Order

For the reasons explained herein, it is hereby

ORDERED that Defendant's Renewed Motion for Compassionate Release, Doc. 107, is denied without prejudice to filing another such motion.

DATED this 16th day of January, 2026.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE